```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/18/15

VICTOR HERNANDEZ,                    :

                    Plaintiff,       :    14 Civ. 5910 (AJN)(HBP)

    -against-                        :    OPINION
                                          AND ORDER
SHTA DANIELS, et al.,                :

                    Defendants.      :

----------------------------------X

PITMAN, United States Magistrate Judge:

In letters dated October 19, 2015 and November 7, 2015, plaintiff seeks to have the Court provide counsel for him. For the reasons set forth below, the applications are denied without prejudice to renewal.

Unlike a criminal case, there is no right to the appointment of counsel in a civil case such as this. There is no provision of the Constitution or statutory provision that requires or permits the Court to appoint, at public expense, an attorney to represent a litigant in a civil case.

Nevertheless, the Court can and does request volunteer attorneys ("pro bono counsel") to represent indigent civil litigants if certain conditions are met.

The factors to be considered in determining whether to request pro bono counsel are well settled and include "the merits

of plaintiff's case, the plaintiff's ability to pay for private counsel, [plaintiff's] efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989).  Of these, "[t]he factor which command[s] the most attention [is] the merits."  Id.; accord Odom v. Sielaff, 90 Civ. 7659 (DAB), 1996 WL 208203 (S.D.N.Y. Apr. 26, 1996) (Batts, J.); see Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2003).  As noted fifteen years ago by the Court of Appeals:

> Courts do not perform a useful service if they appoint a volunteer lawyer to a case which a private lawyer would not take if it were brought to his or her attention.  Nor do courts perform a socially justified function when they request the services of a volunteer lawyer for a meritless case that no lawyer would take were the plaintiff not indigent.

Cooper v. A. Sargenti Co., supra, 877 F.2d at 174; see also Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997) ("'In deciding whether to appoint counsel . . . the district judge should first determine whether the indigent's position seems likely to be of substance.'").

> The Court of Appeals for the Second Circuit has

> stated in various ways the applicable standard for assessing the merits of a pro se litigant's claim.  In Hodge [v. Police Officers, 802 F.2d 58 (2d Cir. 1986)], [the court] noted that "[e]ven where the claim is not frivolous, counsel is often unwarranted where the

> indigent's chances of success are extremely slim," and
> advised that a district judge should determine whether
> the pro se litigant's "position seems likely to be of
> substance," or showed "some chance of success."  Hodge,
> 802 F.2d at 60-61 (internal quotation marks and
> citation omitted).  In Cooper v. A. Sargenti Co., [the
> court] reiterated the importance of requiring indigent
> litigants seeking appointed counsel "to first pass the
> test of likely merit."  877 F.2d 170, 173 (2d Cir.
> 1989) (per curiam).

Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 204

(2d Cir. 2003).

Plaintiff's application does not address what efforts

plaintiff has made to obtain counsel on his own or any special

reasons why plaintiff is unable to litigate this case without

counsel.  Nevertheless, even if I assume that these criteria are

met, the case does not appear to have sufficient merit to warrant

a request for representation to pro bono counsel.

The Amended Complaint alleges, in pertinent part, that

a state employee improperly disclosed information concerning

plaintiff's medical status to other inmates.  I shall assume that

plaintiff can prove this fact.  However, it seems doubtful that

these allegations state a viable claim.  A number of cases have

held that there is no private right of action under the Health

Insurance Portability and Accountability Act ("HIPAA").  In other

words, HIPPA does not permit an aggrieved individual to sue for

damages based on an unauthorized disclosure of medical

3

information.   Copies of three of these decisions -- <u>Rodgers v. Rensselaer County Sheriff's Dep't</u>, 1:14-CV-1162 (MAD/TWD), 2015 WL 4404788 (N.D.N.Y July 17, 2015); <u>Perez v. City of New York</u>, 13 Civ. 3328 (KBF), 2013 WL 6182931 (S.D.N.Y. Nov. 21, 2013); <u>Warren Pearl Constr. Corp. v. Guardian Life Ins. Co.</u>, 639 F. Supp. 2d 371 (S.D.N.Y. 2009) -- are attached.   Although I am not deciding the matter, it strongly appears, at this preliminary stage, that plaintiff's claim is not meritorious as a matter of law.

Accordingly, plaintiff's application for the appointment of counsel is denied without prejudice to renewal. Any renewed application for counsel should address the factors identified above.

Dated:   New York, New York
         November 18, 2015

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies mailed to:

Mr. Victor Hernandez
DIN 15-A-2050
Green Haven Correctional Facility
594 Rt. 216
Stormville, New York  12582-0010

4

Gillian A. Breuer, Esq.
Barbara K. Hathaway, Esq.
Assistant Attorneys General
State of New York
24th Floor
120 Broadway
New York, New York  10271

2015 WL 4404788
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kevin RODGERS, Plaintiff,

v.

RENSSELAER COUNTY SHERIFF'S
DEPARTMENT, Jack Mahar, Katrina
Dinan and Elaine Young, Defendants.

No. 1:14–CV–01162 (MAD/
TWD). | Signed July 17, 2015.

**Attorneys and Law Firms**

Tully, Rinckey, PLLC, David A. Fallon, Esq., of Counsel,
Albany, NY, for Plaintiff.

Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C.,
James A. Resila, Esq., Albany, NY, for Defendants.

Luibrand Law Firm, PLLC, Kevin A. Luibrand, Esq.,
Latham, NY, for Defendant Elaine Young.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

**\*1** On September 22, 2014, Kevin Rodgers (hereinafter
"Plaintiff"), a corrections officer at Rensselaer County
Jail ("RCJ"), commenced this action against Defendants
Rensselaer County Sheriff's Department (hereinafter
"RCSD"), Rensselaer County Sheriff Jack Mahar (hereinafter
"Mahar"), and registered nurses Katrina Dinan and Elaine
Young (hereinafter "Dinan" and "Young"). *See* Dkt. No.
1. Plaintiff alleges that Defendants deprived him of his
Fourteenth Amendment right to privacy in violation of 42
U.S.C. § 1983 when they accessed his medical records
without his consent. *See id.* at ¶¶ 14, 26. Plaintiff named
as Defendants Mahar, Dinan, and Young in their individual
capacities, as well as Mahar in his official capacity. Further,
Plaintiff asserts a municipal liability claim against RCSD
for acting pursuant to custom or policy and/or for failing to
adequately train, supervise, or discipline employees Dinan
and Young. *See id.* at ¶¶ 24, 26, 30, 31, 36, 37.

Currently before the Court are Defendants RCSD, Mahar,
and Dinan's motion to dismiss pursuant to Rule 12(b)(6) of
the Federal Rules of Civil Procedure and Plaintiff's cross-
motion to amend the complaint pursuant to Rule 15(a)(2) of
the Federal Rules of Civil Procedure. Dkt. Nos. 16–1, 35–2.

**II. BACKGROUND**

**A. Plaintiff's Original Complaint**
Plaintiff was employed by RCSD as a corrections officer from
1990–1996 and then again from 2003 until the present. *See*
Dkt. No. 1 at ¶ 7. Plaintiff asserts that in March of 2013,
he received notice from Samaritan Hospital that his medical
records had been accessed on multiple occasions without
Plaintiff's consent by Defendants Dinan and Young. *Id.* at ¶¶
8–10. Plaintiff claims that Defendants Dinan and Young are
authorized as RCJ nurses to access the hospital's electronic
medical record system in order to retrieve inmate's records
but that they exceeded their authority when they accessed
Plaintiff's records. *Id.* at ¶¶ 11, 24. Plaintiff brings this action
under § 1983 for violation of his Fourteenth Amendment right
to privacy. *Id.* at ¶ 24. Plaintiff alleges that Defendant Mahar
should have known, knew, or even directed Defendants Dinan
and Young to access his records. *Id.* at ¶¶ 14, 24, 27.

Plaintiff also brings this claim against RCSD and Sheriff
Mahar alleging a pattern and practice at RCJ of high ranking
officials improperly accessing computer databases in order
to obtain employee's personal and medical information. *Id.*
at ¶¶ 14, 15, 32. Plaintiff claims that Defendant Mahar
used his medical information in an attempt to terminate
him in 2004 and that other employees were subjected to
similar actions. *Id.* at ¶ 13. Finally, Plaintiff states that the
County failed to adequately train, supervise, and/or discipline
Defendants Dinan and Young for exceeding their authority,
demonstrating a deliberate indifference to constitutional
violations against employees. *Id.* at ¶¶ 35, 36, 38. The original
complaint contained forth and fifth causes of action under
the Americans with Disabilities Act ("ADA") and Computer
Frauds and Abuse Act ("CFFA"), which have subsequently
been withdrawn. 42 U.S.C. § 12112; 18 U.S.C. § 1030; Dkt.
No. 22–1 at 12.

**B. Defendants RCSD, Mahar and Dinan's 12(b)(6)
Motion to Dismiss**

**\*2** On November 24, 2014, Defendants RCSD, Mahar, and Dinan filed a Motion to Dismiss pursuant to Rule 12(b)(6). Dkt. No. 16–1. First, Defendants argue that RCSD should be dismissed as a party because a sheriff's department is not a suitable entity under § 1983. *See* Dkt. No. 16–1 at 12. Next, Defendants argue that Plaintiff's *Monell* claims must be dismissed because the complaint fails to plausibly allege a pattern, policy, or custom of accessing employees' private information. *Id.* at 14. Further, Defendants argue that the failure to train and supervise claims must be dismissed because the facts indicate that this was merely an isolated incident about which Defendant Mahar and RCSD had no reason to know. *Id.* at 16.

### C. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss

On December 22, 2014, Plaintiff filed an opposition to Defendants' 12(b)(6) motion. Dkt. No. 22–1. Plaintiff reasserts and offers further arguments in support of counts one, two, and three of the complaint and withdraws counts four and five. *Id.* at 12. Plaintiff also requests that the Court either direct the Clerk to amend the caption of the complaint listing RCSD as a Defendant or grant Plaintiff leave to amend the complaint to name the "County of Rensselaer" as a party instead because

> where a municipality has received notice of the suit against it, and the caption erroneously lists a subdivision of the municipality rather than the municipality itself, it is appropriate to correct the caption of the complaint to identify the municipality as the party defendant, so long as the municipality will not be prejudiced by such substitution.

*Id.* at 2 (citation omitted). Finally, Plaintiff submits that the original complaint is sufficient but requests that, if the Court finds otherwise, that it grant him leave to amend the complaint. *Id.* at 13.

### D. Defendants' Reply

In their reply, Defendants again allege that Plaintiff's complaint fails to state a claim. *See* Dkt. No. 25 at 2. Additionally, Defendants argue that Plaintiff fails to identify a constitutional right that was violated, as required under § 1983. *Id.* at 7. Further, Defendants assert that unauthorized

access to medical records could be construed as a HIPPA violation and therefore cannot serve as the basis of a private right of action under § 1983. *Id.* at 8–9.

### E. Plaintiff's Sur–Reply and Cross Motion to Amend the Complaint

On January 10, 2015, Plaintiff filed a sur-reply requesting denial of Defendants' motion and cross-moving for leave to amend the complaint under Rule 15(a)(2) of the Federal Rules of Civil Procedure. Dkt. Nos. 35–2, 35–3. Plaintiff makes five changes in the proposed amended complaint. First, Plaintiff alters the caption to read "County of Rensselaer" instead of "Rensselaer County Sheriff's Department." Dkt. No. 35–2 at 4. Second, Plaintiff removes the fourth and fifth causes of action, which were previously withdrawn. *Id.* Third, Plaintiff consolidates the first three causes of action from the original complaint into count one of the proposed amended complaint, clarifying that the constitutional right at issue is Plaintiff's right to privacy under the Fourteenth Amendment. *Id.* Plaintiff clarifies that the specific medical condition he suffers from is depression. *See* Dkt. No. 35–4 at 10. Fourth, Plaintiff changes the language of the complaint to indicate that he is seeking punitive damages against the individual Defendants. *See* Dkt. No. 35–2 at 4. Finally, Plaintiff adds a new claim alleging First Amendment retaliation. *Id.*

**\*3** In support of his First Amendment claim, Plaintiff states that Defendant Mahar placed him on administrative leave on January 30, 2012. *See* Dkt. No. 35–3 at ¶ 15. This adverse action occurred less than one month after Defendant Mahar was re-elected as county sheriff. *Id.* Plaintiff actively campaigned for Defendant Mahar's opponent in both the 2003 election and when Mahar was up for re-election in 2011. *Id.* at ¶¶ 7, 14. Plaintiff asserts that the short length of time between Defendant Mahar's re-election and his decision to put Plaintiff on leave is evidence of a causal connection. *Id.* at ¶ 56.

### F. Defendants' Opposition to Plaintiff's Cross–Motion for Leave to Amend

On January 30, 2015, Defendants filed opposition to Plaintiff's motion, arguing that granting leave to amend the complaint would be futile because the proposed amended complaint is deficient. *See* Dkt. No. 37 at 2. Defendants argue that the Fourteenth Amendment protects against unauthorized disclosure of medical information but not improper access. Defendants therefore assert that Plaintiff's rights were not violated. *Id.* at 6. Instead, Defendants again state that improper access of medical records is best construed as a

HIPAA violation and cannot therefore serve as the basis of a § 1983 claim. *Id.* In the alternative, Defendants state that even if improper access to medical information is considered a privacy violation, Plaintiff still fails to state a claim because Plaintiff here suffers from depression, which is not a condition that qualifies for constitutional protection. *Id.* at 7–8.

Instead, Defendants argue that Plaintiff should have filed this suit as a violation of the ADA because depression is considered a "disability" under the Act. *Id.* at 10. Since Plaintiff withdrew his ADA claim after failing to properly file his complaint with the Equal Employment Opportunity Commission ("EEOC"), Defendants argue that "he should not be allowed to bring a Section 1983 [claim] to remedy an alleged harm which should have been brought under the ADA." *Id.* at 10. Finally, Defendants move to dismiss Plaintiff's newly introduced First Amendment violation claim on the grounds that it is time barred under New York's three year statute of limitations. *Id.* at 12.

### III. DISCUSSION

#### A. Standards of Review

##### *1. Motion to Dismiss under Rule 12(b)(6)*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark,* 508 F.3d 106, 111–12 (2d Cir.2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir.2002)).

**\*4** To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed.R.Civ.P.

8(a) (2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]' " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955, 167 L.Ed.2d 929). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly,* 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

##### *2. Motion to Amend a Complaint under Rule 15(a)(2)*

The Federal Rules provide for liberal leave to amend a complaint, and state that a court should freely grant leave to re-plead "when justice so requires." Fed.R.Civ.P. 15(2). It is "well-established that 'outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts.' " *Harrison v. Enventure Capital Group, Inc.,* 666 F.Supp. 473, 479 (W.D.N.Y.1987) (quoting *Nagler v. Admiral Corporation,* 248 F.2d 319, 322 (2d Cir.1957)). For this reason, "dismissals for insufficient pleadings are ordinarily with leave to replead." *Stern v. General Elec. Co.,* 924 F.2d 472, 477 (2d Cir.1991). Leave to amend a pleading need not be granted, however, if it would be futile to do so. *See O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 69 (2d Cir.2002) (citing *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995)).

#### B. Plaintiff's 42 U.S.C. § 1983 Claims

Section 1983 establishes a civil cause of action for deprivation of rights secured by the Constitution or a federal statue: "Every person who, under color of [state law, subjects] ... any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any right, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]" 42 U.S.C. § 1983. In order to state a claim under Section 1983, a plaintiff must show that: (1) "some person has deprived him of a federal right," and

(2) "the person who deprived him of that right acted under the color of state ... law." *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005) (quoting *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)).

**\*5** Not only must the conduct deprive the plaintiff of a protected right, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin,* 758 F.Supp. 876, 881 (S.D.N.Y.1991) (citing *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481, *reh. denied,* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980)). As such, for a plaintiff to recover in a § 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979)) (other citation omitted).

### 1. Defendant RCSD as a Non–Suitable Entity

Under New York State law, " 'a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence.' " *Polite v. Town of Clarkstown,* 60 F.Supp.2d 214, 216 (S.D.N.Y.1999) (quotation omitted). As a result, municipal departments in New York are not amenable to suit. *See id.* (citations omitted). However, where a plaintiff lists a department or subdivision of a municipality in the caption of the complaint, but it is otherwise clear the plaintiff intended to name the municipality, the court can either direct the Clerk to modify the caption or grant the plaintiff leave to amend the complaint to remedy the error. *See United States v. Edwards,* 241 F.R.D. 146, 149 (E.D.N.Y.2007); *see also Bernier v. N.Y.C.D.O.C.,* No. 96 CIV. 7752(HB), 1997 WL 639028, \*1 (S.D.N.Y. Oct.15, 1997) (holding that in such instances "the appropriate remedy ... is not dismissal of the case against the City, which has received notice and has been defending the action, but amendment of the caption").

In this instance, although RCSD is listed in the caption, Plaintiff properly identifies the municipal Defendant as the "County of Rensselaer" in all relevant point headings and otherwise throughout the complaint. *See* Dkt. No. 1 at 2, 7, 8. Further, Plaintiff properly served the County Clerk, County Executive, and County Attorney, thereby putting the County on notice of this suit against it. *See* Dkt. Nos. 2–2, 2–3, 2–4. As such, this Court grants Plaintiff's motion for leave to amend insofar as the proposed amended complaint properly names the County of Rensselaer as a Defendant. [1] For the same reasons, the Court denies Defendants' motion to dismiss against the County of Rensselaer.

[1]   As will be discussed below, Plaintiff's motion to amend the complaint will be granted in part and denied in part.

### 2. Fourteenth Amendment Substantive Due Process Claim

#### a. Right to Privacy

To state a substantive due process claim under § 1983, a plaintiff must demonstrate two elements: (1) the plaintiff "had a valid property interest in a benefit that was entitled to constitutional protection;" and (2) "the defendant's actions were 'so outrageously arbitrary as to be a gross abuse of governmental authority.' " *Taluker v. County of Rensselaer.* No. 1:12CV1765, 2013 U.S. Dist. LEXIS 78809, \*13, 2013 WL 2446246 (N.D.N.Y. June 5, 2013) (quoting *Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 17 (2d Cir.1999)). The right to privacy and confidentiality of the status of one's health is a protected interest under the Fourteenth Amendment. *See Rush v. Aruz,* No. 00Civ3436(LMM), 2004 WL 1770064, \*11 (S.D.N.Y. Aug. 6, 2004) (citation omitted); *see also Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994) (quoting *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)). The interest in privacy "goes to the heart of one's right to be left alone." *Loper v. New York City Police Dep't,* 802 F.Supp. 1029, 1042 (S.D.N.Y.1992).

**\*6** Defendants argue that Plaintiff fails to adequately plead the depravation of a constitutionally protected right. *See* Dkt. No. 25 at 7. Defendants assert that, although the Fourteenth Amendment protects against unauthorized *disclosure* of medical information, it does not protect against improper *access. See* Dkt. No. 37 at 6. The right to privacy "takes two somewhat different forms: the right to personal autonomy ... and the right to confidentiality (i.e., the right to hold certain information private)." *O'Connor v. Pierson,* 426 F.3d 187, 201 (2d Cir.2005) (citations omitted). "As a more general matter, the right to confidentiality includes the right to protection regarding information about the state of one's health." *O'Connor,* 426 F.3d at 201; *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994) (holding that the right to confidentiality includes the right to protection regarding information about the state of one's health). Although confidentiality is often addressed in the context of unauthorized *disclosure* of medical information, it has been construed to protect against other types of intrusions

as well. See *Schwenk v. Kavanaugh,* 4 F.Supp.2d 110, 115 (N.D.N.Y.1998) (holding that a plaintiff's right to privacy was violated when a prosecutor improperly possessed his medical files in order to "set an example for the defendants and others who might be tempted to take a short cut in securing possession of a person's mental health records"); *see also O'Connor* 426 F.3d at 201(finding that an employee's right to privacy was violated where an employer improperly demanded that the employee release his medical records).

Some courts have required an additional element of wrongdoing in cases where there was no disclosure. *See Appel v. Spiridon,* 521 Fed. Appx. 9, 11 (2d Cir.2013) (stating that "invading or intending to invade the privacy of an employee's medical or mental health records will violate the employee's Fourteenth Amendment right to substantive due process if the employer's intent is to injure or to spite the plaintiff"); *see also Lankford v. City of Hobart,* 27 F.3d 477, 479 (10th Cir.1994) (finding that the right to privacy can protect against an employer accessing an employee's private information by seizing her medical records from a local hospital without her consent); *Tapia v. City of Albuquerque,* 10 F.Supp.3d 1207, 1301 (D.N.M.2014) (holding that a government employer may have"violated plaintiffs' substantive due process privacy rights by accessing their records without public disclosure ... [where] the government officials involved accessed the plaintiffs' confidential information as part of an unlawful campaign of sexual harassment") (citation omitted). Even assuming that this additional element is required, the Court finds that Plaintiff plausibly states a claim against Defendants because unauthorized access to medical records can be construed as a violation of confidentiality. Further, Plaintiff alleges that Defendants accessed his files in bad faith and with the intent to use the information to retaliate against Plaintiff, thus asserting an additional element of wrongdoing. *See* Dkt. No. 35–3 at ¶¶ 20, 33, 34, 36.

**\*7** Finally, Defendants argue that even if the right to privacy protects against unauthorized access to medical information, Plaintiff nevertheless fails to state a claim because only certain medical conditions—those which are both serious in nature and subject a person to societal discrimination and intolerance—are protected. *Doe,* 15 F.3d at 267. Defendants contend that Plaintiff's alleged medical condition, *i.e.,* depression, is not a condition subject to constitutional protection. Although it is clear that "medical conditions should only be constitutionalized within 'narrow parameters,' " *Powell v. Schriver,* 175 F.3d 107, 112 (2d Cir.1998), the Second Circuit has made it clear that "medical

information in general, and information about a person's psychiatric health ... in particular, is information of the most intimate kind." *O'Conner,* 426 F.3d at 201. For these reasons, the Court denies Defendants' motion to dismiss and grants Plaintiff's cross motion to amend as to this claim.

### *b. The Health Insurance Portability and Accountability Act ("HIPAA")*

Defendants claim that improper access to medical records is best construed as a HIPAA violation and, as such, Plaintiff was required to"use the mechanisms of that statute to have his claim remedied." Dkt. No. 25 at 8–9. It is well established that, because there is no private right to action under HIPAA, a violation of the Act cannot serve as the basis of a § 1983 claim. *See Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of Am.,* 639 F.Supp.2d 371, 377 (S.D.N.Y.2009); *see also Adams v. Eureka Fire Prot. Dist. .,* 352 Fed. Appx. 137, 139 (8th Cir.2009) (holding that "[s]ince HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of action"). However, contrary to Defendants' assertions, the fact that there is no private right of action under HIPAA does not preclude Plaintiff's Fourteenth Amendment right to privacy claim because it is predicated on conduct outside the scope of HIPAA.

In support of their position, Defendants cite the standard articulated by the Supreme Court in *Gonzaga* and *Abrams. See Gonzaga Univ. v. Doe,* 536 U.S. 273, 282, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002); *City of Rancho Palos Verdes, Cal. v. Abrams,* 544 U.S. 113, 126, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005). In those cases, however, the Supreme Court addressed when a federal statute creates a personal right to enforce pursuant to Section 1983. *See Gonzaga Univ.,* 536 U.S. at 279–80. In the present matter, however, Plaintiff is not seeking to enforce his rights secured by HIPAA. Not once is HIPAA mentioned in either the original or amended complaints. Rather, in both Plaintiff's original and proposed amended complaints, he asserts that Defendants violated his Fourteenth Amendment right to privacy. *See* Dkt. No. 1 at ¶¶ 23, 24; Dkt. No. 35–3 at ¶¶ 32, 33. Since Plaintiff alleges that Defendants violated the Constitution rather than a federal statute, Defendants' reliance on *Gonzaga* and *Abrams* is misplaced. As such, this Court denies Defendants' motion to dismiss on these grounds.

### *c. The Americans with Disabilities Act ("ADA")*
**\*8** Next, Defendants state that Plaintiff's § 1983 substantive due process claim should be barred because depression falls

within the definition of a "disability" under the ADA and that Act requires that a plaintiff exhaust all administrative remedies before filing an action in federal court. 42 U.S.C. § 12101; Dkt. No. 37 at 11. Defendants contend that because "Plaintiff failed to exhaust his administrative remedies under the ADA, he should not be allowed to bring a Section 1983 to remedy an alleged harm which should have been brought under the ADA. The Court finds Defendants' argument unavailing. Although any attempt by Plaintiff to enforce rights protected by the ADA through a Section 1983 cause of action may, in fact, be foreclosed because of his failure to exhaust, *See George v. New York City Transit Auth.,* No. 13 Civ. 7986, 2014 WL 3388660, *3 (S.D.N.Y. July 11, 2014) (citations omitted), the proposed amended complaint makes clear that Plaintiff is making no such claim. Rather, the proposed amended complaint clearly indicates that Plaintiff is alleging violations of his Fourteenth Amendment right to privacy, which are outside the scope of the protections afforded by the ADA.

Based on the foregoing, the Court denies Defendants' motion to dismiss.

### d. Monell Liability

"Although municipalities are within the ambit of section 1983, municipal liability does not attach for actions undertaken by city employees under a theory of *respondeat superior.*" *Birdsall v. City of Hartford,* 249 F.Supp.2d 163, 173 (D.Conn.2003) (citing *Monell v. New York City Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Despite the fact that *respondeat superior* liability does not lie, a municipal entity or employee sued in his or her official capacity can be held accountable for a constitutional violation which has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers ... [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell,* 436 U.S. at 690–91. Such municipal liability can be established in a case such as this in several different ways, including through proof of an officially adopted rule or widespread, informal custom demonstrating "a deliberate government policy or failing to train or supervise its officers." *Bruker v. City of New York,* 337 F.Supp.2d 539, 556 (S.D.N.Y.2004) (quoting *Anthony v. City of New York,* 339 F.3d 129, 140 (2d Cir.2003)). A plaintiff may also show that the allegedly unconstitutional action was "taken or caused by an official whose actions represent an official

policy," or when municipal officers have acquiesced in or condoned a known policy, custom, or practice. *See Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.2000), *cert. denied sub nom., County of Schenectady v. Jeffes,* 531 U.S. 813, 121 S.Ct. 47, 148 L.Ed.2d 16 (2000)); *see also Wenger v. Canastota Cent. Sch. Dist.,* No. 5:95–CV–1081, 2004 WL 726007, *3 (N.D.N.Y. Apr.5, 2004).

**\*9** Defendants claim that Plaintiff fails to plausibly allege a policy or custom of RCJ officials improperly accessing employees' records. *See* Dkt. No. 16–1 at 14. Similarly, Defendants argue that there are no allegations suggesting a failure to train, supervise or discipline Defendants Dinan and Young. *Id.* at 17–19. In Plaintiff's proposed amended complaint, however, he cites to several specific instances where other RCJ employees have allegedly had their medical and criminal records accessed without their consent. *See* Dkt. No. 35–3 at ¶¶ 24–27. Construing all facts in Plaintiff's favor, the Court finds that the facts contained in both the original and proposed amended complaint are sufficient to plausibly state a claim of a municipal policy or custom at RCJ of improper accessing of employees' records.

Similarly, Plaintiff states a plausible claim that the County failed to adequately train, supervise, and or discipline Defendants Dinan and Young regarding their authority to improperly access employees' records. *See* Dkt. No. 35–3 at ¶¶ 18–19, 21–24.. Plaintiff claims that Defendant Mahar was aware that Defendants Dinan and Young improperly accessed employee records. *See id.* at ¶¶ 18–20, 23. Plaintiff likewise states that Defendant Mahar failed to discipline another RCJ employee after he pled guilty in a separate action to unauthorized use of a computer. *See id.* at ¶ 26. That individual is still an RCJ employee. *Id.*

For these reasons, Defendants' motion to dismiss for failure to state a claim for *Monell* liability is denied.

### 3. First Amendment Retaliation

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff—namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff.

*See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (citing *Dawes v. Walker,* 239 F.3d 489, 492 (2d. Cir.2001)).

In count two of the proposed amended complaint, Plaintiff asserts that Defendants retaliated against him for engaging in political speech from 2003 through January 30, 2012, when Plaintiff was finally placed on administrative leave. *See* Dkt. No. 35–3 at ¶ 48. Specifically, Plaintiff states that he was active in the political campaigns of Defendant Mahar's opponents in both the 2003 and 2011 elections for County Sheriff. *Id.* at ¶¶ 7, 14. Defendant Mahar's opponent in 2003 also happened to be Plaintiff's uncle. *Id.* at ¶ 7. Plaintiff was also active union participant in 2005. *Id.* at ¶ 10. Plaintiff alleges that in retaliation for these activities, Defendant Mahar targeted him with constant harassment and intentionally assigned him to undesirable tasks at RCJ. *Id.* at ¶¶ 11, 12. Defendant Mahar also suspended Plaintiff on five different occasions without pay, each instance of which was eventually deemed baseless. *Id.* at ¶ 11. Further, Plaintiff claims that from 2004 through late January 2012, Defendant Mahar "would routinely tell Rodgers that he should 'go on disability' ... despite the fact that Rodgers was medically fit to perform the essential functions of his position." *Id.* at ¶ 13. Finally, on January 30, 2012, just twenty-seven days after being sworn in as Sheriff, Defendant Mahar placed Plaintiff on administrative leave, where he remains to this day. *Id.* at ¶ 15. Plaintiff states that there is no legitimate justification for Defendant Mahar's actions. *Id.* Defendants move to dismiss this claim on the grounds that once Plaintiff's allegations are properly limited by the controlling statute of limitations, the proposed amended complaint fails to state a plausible retaliation claim. *See* Dkt. No. 37 at 13. The statute of limitations applicable to § 1983 claims is the "statute of limitations applicable to personal injuries occurring in the state in which the appropriate federal court sits." *Dory v. Ryan,* 999 F.2d 679, 681 (2d Cir.1993) (citation omitted). In New York State, the statute of limitations for personal injury claims is three years. *See id.* (citing N.Y. Civ. Prac. L. § 214(5) (McKinney 1990)) (other citations omitted); *see also Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) (holding that § 1983 claims arising in New York are subject to a three-year statute of limitations). Further, accrual begins when the plaintiff "knows or has reason to know of the injury that is the basis for his action." *Pauk v. Bd. of Trustees of City Univ. Of New York,* 654 F.2d 856, 859 (2d Cir.1981) (citation omitted).

**\*10** Plaintiff filed his cross-motion to amend the complaint, which includes this new cause of action, on January 10, 2015. *See* Dkt. No. 35–2. Therefore, as Defendants correctly contend, the statute of limitations precludes any alleged incidences of retaliation prior to January 10, 2012. [2] Even when so limited, however, the Court finds that Plaintiff pleads facts sufficient to support his claim against Defendant Mahar. The fact that Plaintiff was placed on administrative leave less than one month after Defendant Mahar was re-elected is well within the time frame courts have accepted as evidence of a causal connection. *See Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988) (holding that "[p]roof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action"); *see also Gorman–Bakos v. Cornell Co-op Extension of Schenectady Cnty.,* 252 F.3d 545, 555 (2d Cir.2001) (finding that a time lapse three or more months is "brief enough to support an inference of a causal connection between the free speech and the alleged retaliatory actions"). Further, the date ranges provided by Plaintiff for the alleged ongoing acts of retaliation, including harassment and the assignment of undesirable work tasks, state that such acts continued through "late January, 2012." *See* Dkt. No. 35–3 at ¶¶ 11, 12. Construing all facts in favor of Plaintiff, the Court finds that the proposed amended complaint states a plausible claim of First Amendment retaliation against Defendant Mahar for conduct occurring after January 10, 2012.

2    Although Rule 15(c) of the Federal Rules of Civil Procedure allows for new claims in an amended complaint to relate back to the date the original complaint was filed in certain situations, the relation-back doctrine is inapplicable in the present matter. *See* Fed.R.Civ.P. 15(c). "An amendment of a pleading relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed.R.Civ.P. 15(c)(1)(B). "In determining whether the claim arises out of the same conduct or occurrence, '[t]he pertinent inquiry ... is whether the original complaint gave the defendant fair notice of the newly alleged claims .' " *Fama v. Commissioner of Corr. Serv.,* 235 F.3d 804, 815 (2d Cir.2000) (quoting *Wilson v. Fairchild Republic Co.,* 143 F.3d 733, 738 (2d Cir.1998)). Plaintiff's original complaint does not assert any facts relating to the alleged retaliation asserted in the proposed amended complaint; and, therefore, Plaintiff's First Amendment retaliation

claim does not relate back to the filing date of the original complaint.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to amend the complaint is **GRANTED in part and DENIED in part;** [3] and the Court further

---

[3]     As set forth in this Memorandum–Decision and Order, Plaintiff's motion to amend the complaint is only denied insofar as the proposed amended complaint set forth a claim relating to harm stemming from First Amendment retaliation which occurred prior to January 10, 2012.

**ORDERS** that the Defendants' motion to dismiss is **GRANTED in part and DENIED in part;** and the Court further

**ORDERS** that Plaintiff shall file a signed copy of his amended complaint within **ten (10) days** of the filing date of this Memorandum–Decision and Order; and the Court further

**ORDERS** that the Clerk of this Court shall serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2015 WL 4404788

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 6182931
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jorge **PEREZ**, Plaintiff,
v.
The **CITY** OF **NEW YORK** et al., Defendants.

No. **13 Civ. 3328**(KBF). | Nov. 21, 2013.

**Attorneys and Law Firms**

Jorge **Perez**, NIC/Medical Unit, East Elmhurst, NY, pro se.

---

*MEMORANDUM DECISION & ORDER*

KATHERINE B. FORREST, District Judge.

**\*1** On May 16, 2013, plaintiff *pro se* Jorge **Perez** commenced this action alleging misconduct with respect to his medical treatment by defendants **City** of **New York**, Prison Health Services, doctor Raul Ramos, and nurses Alma Scott–Baptiste, Nadyne Pressley, Adetokunbo Odunbaku, and Tanisha Bowen. (Compl. 13, ECF No. 2.) Plaintiff pleads a claim for deliberate indifference to his medical needs in violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983 and a claim for violation of the Health Insurance Portability and Accountability Act (HIPAA). Before the court now is defendants' unopposed motion to dismiss the complaint. For the following reasons, the motion is GRANTED.

---

**I. BACKGROUND**

Plaintiff, an inmate at the **City** of **New York** Department of Correction, alleges a sequence of events occurring on February 21, 2013, the date on which he was arrested. (Compl.2.) Specifically, plaintiff claims that defendant Ramos was instructed by an unspecified "outside hospital doctor" to continue administering to him certain pain and diabetes medications, but that Ramos discontinued treatment. (Compl.3.) Plaintiff notified both defendants Ramos and Bowen of his lack of medical treatment, but found that they did not follow up with him, and that "they [did] not care" when he was "feeling sick or not doing very well." (*Id.*) Plaintiff further alleges that the nurses named

in his complaint refused to provide him with treatment that other patients received. (*Id.*) Finally, plaintiff alleges that defendants violated HIPAA by discussing his medical issues with officers who had no medical experience, as well as at least one other inmate. (*Id.*)

Defendants filed the instant motion to dismiss on September 16, 2013, arguing that plaintiff has failed to state a claim under both causes of action. (ECF No. 22.) Plaintiff did not oppose defendants' motion.

---

**II. STANDARDS OF REVIEW**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers...." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (citations and internal quotation marks omitted). Accordingly, the Court "liberally construe[s] pleadings and briefs submitted by *pro se* litigants ... reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States,* 478 F.3d 489, 491 (2d Cir.2007). However, even a *pro se* complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678; *see Fuentes v. Tilles.* 376 F. App'x 91, 92 (2d. Cir.2010) (affirming the district court's dismissal of a *pro se* complaint for failure to state a claim).

**\*2** A "court should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation omitted). Nonetheless, "a futile request to replead should be denied." *Id.*

In deciding an unopposed motion to dismiss, the Court is to "assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki,* 232 F.3d 321, 322–23 (2d Cir.2000) (citation omitted).

### III. *DISCUSSION*

Construed liberally, plaintiff's complaint states two causes of action: first, deliberate indifference to his medical needs in violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983, and second, a claim for violation of HIPAA.

### A. *Plaintiff's Claims Under 42 U.S.C. § 1983*

#### 1. *Claims Against Individual Defendants*
To succeed on a claim under 42 U.S.C. § 1983 for deprivation of medical care, a plaintiff must show that a defendant undertook "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106; *see also Cuoco,* 222 F.3d at 106. "The standard for deliberate indifference includes a subjective component and an objective component." *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir.2011).

To fulfill the subjective prong of the standard, "the official charged with deliberate indifference must act with a 'sufficiently culpable state of mind.' That is, the official must 'know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.* (alterations omitted) (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991); *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

Here, plaintiff alleges that an outside hospital doctor recommended that defendant Ramos administer or continue administering certain medications, and that Ramos failed to do so. (Compl.3.) Plaintiff also alleges that defendants Ramos and Bowen acted "like they do not care." (*Id.*) However, these barebones allegations fail to rise to the level required for a "sufficiently culpable state of mind." *See Hill.* 657 F.3d at 122. The complaint alleges no facts indicating that Ramos and Bowen knew of and disregarded *any* risk—let

alone an excessive risk—of harm to plaintiff. Similarly, while plaintiff alleges that the other nurses did not provide him with medication with which other prisoners were provided, the complaint is devoid of allegations relevant to their state of mind and whether they were aware of any risk that arose from their failure to provide him medication.

**\*3** Therefore, plaintiff's claim does not fulfill the subjective component of deliberate indifference. *See Colon v. City of N.Y.,* No. 08 **Civ**. 3142(HB), 2009 WL 1424169, at *7 (S.D.N.Y. May 21, 2009) ("Nor can deliberate indifference be established where an inmate might prefer a different treatment or feels he did not receive the level of medical attention he desired.") (quotation marks omitted).

To fulfill the objective component of the deliberate indifference standard, plaintiff must show that "the alleged deprivation [is] sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill,* 657 F.3d at 122 (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)).

Here, plaintiff does not allege any condition that would constitute a sufficiently serious deprivation of medical care. Plaintiff alleges only that the medical staff did not did not follow up with him and acted like "they [did] not care" when plaintiff was "feeling sick or not doing very well." (Compl.3.) At no point does plaintiff allege an "urgen[t]" condition that "may produce death, degeneration, or extreme pain." *Hill,* 657 F.3d at 122. Plaintiff also does not allege that defendant Ramos's decision not to administer medication to plaintiff, or the nurses' failure to provide him with the same medication other patients received, created such a condition.

As a result, plaintiffs complaint does not meet the objective component of the deliberate indifference standard. *See Fox v. Fischer,* 242 F. App'x. 759, 759 (2d Cir.2007) (summary order) (holding that plaintiff failed to meet the objective prong of a deliberate indifference claim because there was "no allegation that the change in medication caused harm").

Because plaintiff meets neither the subjective nor the objective component of the deliberate indifference standard, his claim against the individual defendants for deprivation of medical care must be dismissed.

#### 2. *Claims Against the City of New York*

Plaintiff names the **City** of **New York** as one defendant in this case. (Compl.1.) However, a municipality can only be liable under 42 U.S.C. § 1983 where the "execution of a government's policy or custom ... inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In particular, to establish municipal liability, a plaintiff must demonstrate three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983).

Here, plaintiff has not identified a policy or custom—or even suggested that one may exist—relevant to medical treatment and dispensing medication that led to a violation of his constitutional rights. (*See generally* Compl.) Thus, even accepting all of plaintiffs' factual allegations as true and liberally construing his complaint, his claim against the **City** of **New York** must be dismissed.

### 3. *Claims Against Prison Health Services*

\*4 Based on the uncontested representation by defendants in their motion to dismiss, Corizon Health, Inc., rather than Prison Health Services, provided medical care at the facility in which plaintiff was incarcerated. (Mem. of L. in Supp. of Defs.' Mot. to Dismiss 2 n. 2, ECF No. 24). Therefore, plaintiff's claim against Prison Health Services must be dismissed as against an improper party to this action.

### B. *Plaintiff's Claims Under HIPAA*

"HIPAA established standards for the protection of individual health information, and allowed the promulgation of regulations designed to protect the privacy and accuracy of individually identifiable health information." *Alsaifullah v. Furco,* No. 12 **Civ**. 2907(ER), 2013 WL 3972514, at *17 (S.D.N.Y. Aug 2, 2013). Here, plaintiff alleges violations of HIPAA by unspecified individuals who discussed his medical issues with corrections officers and inmates. (Compl.3.)

However, HIPAA does not provide for a private right of action. *See Warren Pearl Constr. Corp., et al. v. Guardian Life Ins. Co. of Am.*, 639 F.Supp.2d 371, 377 (S.D.N.Y.2009) (collecting cases across numerous circuits standing for that

proposition). Rather, HIPAA enforcement actions are in the exclusive purview of the Department of Health and Human Services. *See* 42 U.S.C. § 300gg–22(a) (explaining that "the Secretary" shall enforce HIPAA); *Shallow v. Scofield,* 11 **Civ**. 6028(JMF), 2012 WL 4327388, at *4 (S.D.N.Y. Sep. 21, 2012) ("[O]nly the Secretary of HHS or authorized state authorities may bring a HIPAA enforcement action.").

Accordingly, plaintiff's HIPAA claim must be dismissed.

### IV. *CONCLUSION*

For the reasons set forth above, defendants' motion is GRANTED, and plaintiff's complaint is DISMISSED without prejudice for failure to state a cause of action pursuant to Fed.R.Civ.P. 12(b)(6).

The Court is mindful that a plaintiff should be granted leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco*, 222 F.3d at 112. Here, an amended complaint could in theory state a valid claim, if plaintiff made specific allegations as to the state of mind of the individual defendants and as to plaintiff's medical conditions.

Accordingly, the Court grants plaintiff leave to reopen the case within 60 days. Plaintiff may reopen the case by filing an amended complaint addressing the infirmities discussed in this Decision by **Monday, January 20, 2014.** *See, e.g., Mitchell v. New York City Dep't of Corrs.,* No. 10 **Civ**. 0292(RJH), 2011 WL 503087, at *6 (S.D .N.Y. Feb. 14, 2011).

The Clerk of Court is hereby directed to close the motion at ECF No. 22 and to terminate this action.

SO ORDERED.

### All Citations

Slip Copy, 2013 WL 6182931

---

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.

47 Employee Benefits Cas. 1619

639 F.Supp.2d 371
United States District Court,
S.D. New York.

WARREN PEARL CONSTRUCTION
CORPORATION et al., Plaintiffs,

v.

GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA, Defendant.

No. 08 Civ. 9445(WHP).  |  July 22, 2009.

**Synopsis**
**Background:** Employer and beneficiaries of a benefit plan governed by the Employee Retirement Income Security Act (ERISA) sued insurer, seeking to prevent the insurer from terminating coverage under a small group supplemental major medical insurance policy. Insurer moved for summary judgment.

**Holdings:** The District Court, William H. Pauley III, J., held that:

[1] Health Insurance Portability and Accountability Act (HIPAA) does not provide for a private right of action;

[2] resolving an issue of first impression, insurer's decision to withdraw the policy from the market did not "establish rules for eligibility" within the meaning of ERISA;

[3] insurer was not liable, as the de facto plan administrator, for failure to furnish a summary plan description (SPD);

[4] certificate of coverage adequately set forth the circumstances which could result in disqualification, ineligibility, or denial or loss of benefits; and

[5] policies sought as replacement options were not "currently being offered" within the meaning of a state statute addressing required options.

Motion granted.

West Headnotes (13)

**[1]** **Action**
⟜ Statutory rights of action

**Health**
⟜ Records and duty to report; confidentiality in general

**Insurance**
⟜ Grounds of action

Health Insurance Portability and Accountability Act (HIPAA) does not provide for either an express or implied private right of action. Health Insurance Portability and Accountability Act of 1996, § 102(a), 42 U.S.C.A. § 300gg–22.

16 Cases that cite this headnote

**[2]** **Action**
⟜ Statutory rights of action

**Constitutional Law**
⟜ Creation of rights of action

Without a showing of congressional intent, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

1 Cases that cite this headnote

**[3]** **Insurance**
⟜ Health Related Entities

**Insurance**
⟜ Underwriting

**Labor and Employment**
⟜ Eligibility rules in general

Insurer's decision to withdraw a small group supplemental major medical insurance policy from a state small group market did not "establish rules for eligibility" within the meaning of an ERISA section prohibiting insurers from establishing eligibility criteria based on health status or claims experience; examples in regulations suggested that a "rule for eligibility" presupposed the existence of a policy and attendant coverage, and interpreting

Case 1:14-cv-05910-AJN-HBP   Document 61   Filed 11/18/15   Page 18 of 26

**Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of America, 639 F.Supp.2d 371 (2009)**

47 Employee Benefits Cas. 1619

the phrase to apply to the insurer's decision to withdraw the policy from the market would have been at odds with the statute as a whole. Employee Retirement Income Security Act of 1974, § 702(a)(1), 29 U.S.C.A. § 1182(a)(1).

Cases that cite this headnote

**[4]    Statutes**
    ⟜ Language

Construction of a statute begins with the words of the text.

Cases that cite this headnote

**[5]    Statutes**
    ⟜ Design, structure, or scheme

**Statutes**
    ⟜ Context

Statutory construction is a holistic endeavor; the meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another.

Cases that cite this headnote

**[6]    Statutes**
    ⟜ Context

Cardinal rule of statutory construction is that a statute is to be read as a whole, since the meaning of statutory language, plain or not depends on context.

Cases that cite this headnote

**[7]    Statutes**
    ⟜ Liberal or strict construction

Remedial legislation should be construed broadly to effectuate its purposes.

Cases that cite this headnote

**[8]    Labor and Employment**
    ⟜ Summary Plan Description

Insurer under a small group medical insurance policy, who was not designated as the administrator of an ERISA plan, could not be treated as the de facto administrator, so as to render it liable for failure to furnish a summary plan description (SPD), even though it allegedly controlled all aspects of plan administration. Employee Retirement Income Security Act of 1974, §§ 3(16)(A, B), 104(b), 502(a)(1)(B), 29 U.S.C.A. §§ 1002(16)(A, B), 1024(b), 1132(a) (1)(B).

3 Cases that cite this headnote

**[9]    Labor and Employment**
    ⟜ Equitable relief; injunction

Plaintiff may pursue an equitable claim against a de facto ERISA plan administrator who fails to provide adequate disclosures. Employee Retirement Income Security Act of 1974, § 502(a)(3), 29 U.S.C.A. § 1132(a)(3).

3 Cases that cite this headnote

**[10]    Labor and Employment**
    ⟜ Summary Plan Description

Assuming that an insurer's certificate of coverage was a summary plan description (SPD) within the meaning of ERISA, it adequately set forth the circumstances which could result in disqualification, ineligibility, or denial or loss of benefits, despite claim that the insurer did not provide any document disclosing its ability to terminate a medical policy, as opposed to the plan; the plan operated entirely through the policy. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

Cases that cite this headnote

**[11]    Labor and Employment**
    ⟜ Welfare Plans

Company may establish an employee welfare benefit plan, within the meaning of ERISA, merely by purchasing a group policy for its employees, and the plan may consist of nothing but the purchased policy document. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

Case 1:14-cv-05910-AJN-HBP   Document 61   Filed 11/18/15   Page 19 of 26

Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of America, 639 F.Supp.2d 371 (2009)

47 Employee Benefits Cas. 1619

Cases that cite this headnote

**[12]   Insurance**
   &#x1F44D; Underwriting

**Insurance**
   &#x1F44D; Right or Obligation to Renew

**Insurance**
   &#x1F44D; Operation and effect

New York statute providing that, where an insurer decides to discontinue a particular type of group health insurance coverage, it must offer to each policyholder the option to purchase all other hospital, surgical and medical expense coverage "currently being offered" by the insurer permits an insurer to continue to renew policies without accepting any new applicants for such policies. N.Y.McKinney's Insurance Law § 3221(p)(3)(A)(ii); 11 NYCRR 360.4(a), (f)(1, 2).

Cases that cite this headnote

**[13]   Labor and Employment**
   &#x1F44D; Result or outcome of litigation

Although success on the merits is not, in theory, indispensable to an award of attorneys' fees under ERISA, rarely will a losing party be entitled to fees. Employee Retirement Income Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1).

Cases that cite this headnote

**Attorneys and Law Firms**

**\*373** John Walter Fried, Esq., Fried and Epstein, New York, NY, for Plaintiffs.

Paul Kenneth Stecker, Esq., Phillips Lytle LLP, New York, NY, for Defendant.

### *MEMORANDUM & ORDER*

WILLIAM H. PAULEY III, District Judge:

Plaintiffs Warren Pearl Construction Corporation ("WPC"), Warren Pearl, Susan Pearl, and Warren Pearl and Susan Pearl as next friend of Ian Pearl (collectively "Plaintiffs"), bring this action pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), against Defendant Guardian Life Insurance Company of America ("Guardian") seeking to prevent Guardian from terminating coverage under a Guardian small group supplemental major medical insurance policy (the "WPC Policy"). On December 9, 2008,   **\*374** 2008 WL 5329962, this Court denied Plaintiffs a preliminary injunction on their ERISA, HIPAA, and estoppel claims (the "December 2008 Memorandum & Order"). Defendant moves for summary judgment dismissing this action. For the following reasons, Defendant's motion is granted.

### *BACKGROUND*

From December 1, 1981 to December 1, 2008, the WPC Policy insured the major medical expense portion of the employee welfare benefit plan (the "Plan") of Swim Construction Company, its successor, Courbette Construction, and its successor, WPC. (Plaintiffs Local Rule 56.1 Counterstatement of Material Facts dated June 24, 2009 ("Pl. Counterstatement") ¶ 1.) The Certificate of Coverage outlines the Plan's insurance benefits. It provides that "coverage ends ... on the date [eligible employees] stop being a member of a class of *employees* eligible for insurance under this plan, or when this plan ends for all *employees.*" (Declaration of John W. Fried dated June 24, 2009 ("Fried Decl.") Ex. 12: Certificate of Coverage at WPC–0457.) (emphasis in original). It also defines "Plan" as "the Guardian *plan* of group insurance purchased by your *employer.*" (Certificate of Coverage at WPC–0444.) (emphasis in original).

The WPC Policy covered Warren Pearl, his wife Susan Pearl, and their son Ian Pearl. (Pl. Counterstatement ¶ 4.) Ian Pearl suffers from Type II Spinal Muscular Atrophy, a form of muscular dystrophy. (Pl. Counterstatement ¶ 5.) In 1991, Ian Pearl suffered full respiratory arrest that left him entirely ventilator-dependent. (Pl. Counterstatement ¶ 6.) As a result, Ian Pearl receives 24–hour nursing care in his parents' home in Florida. (Pl. Counterstatement ¶ 6.) The WPC Policy has provided WPC employees and their dependents with nursing and home health care benefits without any lifetime or annual benefit limitations. (Pl. Counterstatement ¶ 7.)

**Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of America, 639 F.Supp.2d 371 (2009)**

47 Employee Benefits Cas. 1619

The WPC Policy, designated form "R0," was the first medical contract sold by Guardian in New York. (Pl. Counterstatement ¶ 2.) As of August 1, 1987, Guardian stopped selling health insurance policies designated "R0" to new policyholders in the New York small group market, [1] but continued to renew extant "R0" policies like WPC's. (Pl. Counterstatement ¶¶ 11–12.) Guardian's second medical contract was designated "R1." Guardian also ceased offering that newer "R1" policy to new policyholders in New York as of August 1, 1987, but continued to renew "R1" form policies for existing policyholders. (Fried Decl. Ex. 9: E-mail from Ariel Fernando to Deborah Connolly dated June 8, 2007 ("Fernando E-mail") at GLIC08083.) In May 1992, Guardian discontinued marketing its third small group policy form known as "R2," but continued to renew "R2" form policies for existing policyholder groups. (Fernando E-mail at GLIC08083.) Since 1992, Guardian's "R3" policy form is the only policy it markets to prospective policyholder groups. (Fernando E-mail at GLIC08083.) While the "R1" and "R2" policy forms offer some private duty nursing coverage, the "R3" policy form does not. (Pl. Counterstatement ¶ 76.)

[1]   The small group market consists of employers with between 2 and 50 employees.

In 2006, Guardian commenced an initiative referred to as "Moving Forward," which was designed to increase Guardian's competitive position by reducing what it paid out in claims. (Pl. Counterstatement ¶ 29.) As part of its "Risk Management Initiative," Guardian sought to eliminate products or groups of products with high claims experience. (Deposition transcript **\*375** of Ariel Fernando dated Feb. 20, 2009 ("Fernando Dep. Tr.") at 17.) "Moving Forward" also included the "Discontinuation Project," an evaluation of medical insurance products and health insurance policies to determine whether they should be discontinued to achieve the corporate goals of "Moving Forward." (Pl. Counterstatement ¶ 31.) The "Discontinuation Project" involved a state-by-state examination of premiums, claims, and loss ratios of Guardian's older medical policies—the "R0," "R1," and "R2" forms, among others. (Pl. Counterstatement ¶ 36.) The loss ratio is the ratio of incurred claims to earned premiums. (Pl. Counterstatement ¶ 37.)

In November 2006, Guardian began studying its older policy forms in those states where Guardian's loss ratios were high. (Pl. Counterstatement ¶ 41.) Guardian examined specific plans and groups by claims experience. (Pl. Counterstatement ¶ 84.) That analysis identified incurred claims and loss

ratios on a policy-by-policy basis. (Pl. Counterstatement ¶ 50.) Guardian considered such factors as to whether each policy's claims were based on an ongoing medical condition, which was likely to continue, or a terminal illness. (Pl. Counterstatement ¶ 55; Affidavit of Ariel Fernando dated June 10, 2009 ¶ 6.) The WPC Policy was identified as one with significant losses as part of that examination. (Pl. Counterstatement ¶ 58.) Guardian identified New York, New Jersey, and South Carolina as the states with the greatest losses. (Pl. Counterstatement ¶ 49.) Guardian determined that 29.9% of all medical claims paid in New York under the "R0" policy were for private duty nursing. In New Jersey, 53.3% of all medical claims paid under the "R0" policy were for private duty nursing. (Pl. Counterstatement ¶ 69.)

In January 2007, Guardian decided to discontinue the older policy forms in New York, New Jersey, and South Carolina because policyholders in those states were generating the highest claims. (Pl. Counterstatement ¶ 79.) Subsequently, Guardian also decided to discontinue those policies in Colorado. (Pl. Counterstatement ¶ 80.)

By letter dated July 2, 2007, Guardian alerted the New York State Insurance Department ("DOI") that it would discontinue all "R0" policies offered to small groups and "offer [them] the option to purchase one of our actively marketed plans under our R3 contract." (Fried Decl. Ex. 46: Guardian notice of intent of policy discontinuance to DOI dated July 2, 2007 ("Discontinuation Letter") at 1.) Guardian cited three "Reasons for Discontinuance": (1) "[t]hese plans were written under our oldest generation of contract under which the language is vague and obsolete"; (2) "these plans are complex to administer and we hope this discontinuation will reduce the amount of complexity in administering similar plans"; and (3) "the very high loss ratios we've experienced over the last two years." (Discontinuation Letter at 2–3.) In the Discontinuation Letter, Guardian also informed DOI that it "will offer these small employers affected by the discontinuation the option to purchase all other hospital, surgical and medical expense coverage currently being offered," and that "[a]ll new plans sold since 1992 has [*sic* ] been under the R3 contract." (Discontinuation Letter at 1.) At the time, Guardian had approximately 54 "R0" policyholders in New York, including WPC. (Plaintiffs' Local Rule 56.1 Statement ¶ 3.) On September 13, 2007, DOI informed Guardian that "[t]he letters and supporting material regarding your company's product discontinuance are now acceptable." (Affidavit of Paul K. Stecker dated July 2, 2009 Ex. A at 330: E-mail from Stephen Rings to Ariel Fernando.)

Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of America, 639 F.Supp.2d 371 (2009)

47 Employee Benefits Cas. 1619

**\*376** On August 20, 2008, Guardian advised WPC that it was discontinuing the WPC Policy effective December 1, 2008 because it was withdrawing "R0" policies from the market. (Pl. Counterstatement ¶ 29.) Guardian did not inform WPC that it could opt to replace the WPC Policy with either the "R1" or "R2" form policies. (Pl. Counterstatement ¶ 103.) With respect to Ian Pearl, Guardian agreed to a year-long extension of benefits provided for disabled dependents under the WPC Policy, which is scheduled to end on December 1, 2009. (Pl. Counterstatement ¶ 122.)

By letter dated August 25, 2008, WPC lodged its objection to Guardian's discontinuation of the WPC Policy with DOI. (Pl. Counterstatement ¶ 114.) In September 2008, DOI responded, concluding that it "found no evidence that [Guardian] violated New York State Insurance Laws or Regulations." (Fried Decl. Ex. 56: DOI response to WPC complaint dated September 19, 2008.) DOI's State Health Bureau representative testified:

> I believe we have read [N.Y. Ins. Law § 3221(p) ] ... to mean that so long as all insureds covered by the plan are being treated in the same manner as opposed to being selectively treated so that some insureds would not be terminated and other insureds would be, that that not being the case here, we would not have proceeded to look into that matter under our reading of our authority in the statute.

(Deposition transcript of Stephen Rings dated Jan. 23, 2009 at 38–39.)

### DISCUSSION

#### I. *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Davis v. Blige,* 505 F.3d 90, 97 (2d Cir.2007). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In determining whether there is a genuine issue

as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505; *Jeffreys v. City of N.Y.,* 426 F.3d 549, 553 (2d Cir.2005).

### II. *HIPAA*

**[1]** Plaintiffs allege that Guardian violated the Health Insurance Portability and Accountability Act ("HIPAA") and its state law counterpart by terminating the WPC Policy based on Ian Pearl's adverse claims experience.

HIPAA provides that "if a health insurance issuer offers health insurance coverage in the small or large group market in connection with a group health plan, the issuer must renew or continue in force such coverage at the option of the sponsor of the plan." 42 U.S.C. § 300gg–12(a). One exception permits an insurer to terminate a particular type of coverage in the small group market where "the issuer acts uniformly without regard to the claims experience of those sponsors or any health status-related factor relating to any participants or beneficiaries covered...." 42 U.S.C. § 300gg–12(c)(1)(C). HIPAA provides that only the Secretary of Health and Human Services or other authorized state authorities may bring a HIPAA enforcement action. *See* 42 U.S.C. § 300gg–22.

**\*377 [2]** "Without a showing of congressional intent, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Bellikoff v. Eaton Vance Corp.,* 481 F.3d 110, 116 (2d Cir.2007). As a result, courts have held that HIPAA does not provide for either an express or implied private right of action. *See Acara v. Banks,* 470 F.3d 569, 571 (5th Cir.2006) ("[W]e are not alone in our conclusion that Congress did not intend for private enforcement of HIPAA."); *Webb v. Smart Document Solutions, LLC,* 499 F.3d 1078, 1081 (9th Cir.2007) ("HIPAA itself provides no private right of action."); *accord Runkle v. Gonzales,* 391 F.Supp.2d 210, 237 (D.D.C.2005); *Valentin Munoz v. Island Finance Corp.,* 364 F.Supp.2d 131, 136 (D.Puerto Rico 2005); *O'Donnell v. Blue Cross Blue Shield of Wyo.,* 173 F.Supp.2d 1176, 1180 (D.Wyo.2001); *Royce v. Veteran Affairs Regional Office,* No. 08 Civ. 01993(KMT)(KLM), 2009 WL 1904332, at \*6 (D.Colo. July 1, 2009); *Hines v. N. W.Va. Operations,* No. 08 Civ. 144(FPS), 2009 WL 1228305, at \*3 (N.D.W.Va. May 1, 2009). Accordingly, Defendant's motion for summary judgment dismissing Plaintiffs' HIPAA claim is granted. [2]

Case 1:14-cv-05910-AJN-HBP   Document 61   Filed 11/18/15   Page 22 of 26

Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of America, 639 F.Supp.2d 371 (2009)
47 Employee Benefits Cas. 1619

2     Plaintiffs also invoke a nearly identical provision of state insurance law as part of its claim that Defendant violated HIPAA. *See* N.Y. Ins. Law § 3221(p)(3)(A). Since § 3221(p)(3)(A)(iii) reflects the state's efforts to comply with HIPAA, *see* 42 U.S.C. § 300gg–22(a) (1), but similarly contains no private right of action, Plaintiffs' state law claim is also dismissed.

## III. *ERISA*

### A. *Discrimination*

Section § 1182(a)(1) of ERISA provides, "Subject to paragraph (2), a group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not establish rules for eligibility (including continued eligibility) of any individual to enroll under the terms of the plan based on ... [h]ealth status [and, or] ... [c]laims experience." 29 U.S.C. § 1182(a)(1). Subsection (2) provides that (a)(1) shall not be construed "to require a group health plan, or group health insurance coverage, to provide particular benefits other than those provided under the terms of such plan or coverage." 29 U.S.C. § 1182(a)(2). Section 1182 "may be enforced by an ERISA participant's claim 'to enjoin any act or practice which violates any provision of this subchapter.' " *Werdehausen v. Benicorp Ins. Co.*, 487 F.3d 660, 668 (8th Cir.2007) (quoting 29 U.S.C. § 1132(a)); *see also Stang v. Clifton Gunderson Health Care Plan*, 71 F.Supp.2d 926, 933 (W.D.Wis.1999) (permitting plaintiff to bring an action under § 1182 based on the private right of action available under § 1132(a)).

[3]    No court has addressed the meaning of the phrase "establish rules for eligibility." Thus, the question—whether Guardian's decision to withdraw the "R0" form policy from the New York small group market "establish[ed] rules for eligibility" within the meaning of 29 U.S.C. § 1182(a)(1)— is an issue of first impression.

[4]    [5]    [6]    [7]    Construction of a statute begins with the words of the text. *Mallard v. United States Dist. Court*, 490 U.S. 296, 300, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989); *Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 101 (2d Cir.2004) (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir.2003)). "Statutory construction ... is a holistic endeavor." **\*378** *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). "The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another." *Knox v.*

*Agria Corp.*, 613 F.Supp.2d 419, 421–22 (S.D.N.Y.2009) (quoting *Auburn Housing Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir.2002)). The "cardinal rule [is] that a statute is to be read as a whole, ... since the meaning of statutory language, plain or not depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991). It is also a " 'familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes.' " *Henrietta D. v. Bloomberg*, 331 F.3d 261, 279 (2d Cir.2003) (quoting *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967)).

The phrase "establish rules for eligibility" does not appear on its face to address an insurer's decision to withdraw a policy form from the market. The regulations promulgated under HIPAA interpreting the phrase provide examples of rules for eligibility that violate the statute. *See* 29 C.F.R. § 2590.702(b) (1)(iii); *see also Ames v. Group Health Inc.*, 553 F.Supp.2d 187, 193 (E.D.N.Y.2008) (turning to the HIPAA regulations to determine whether Defendant's rules for eligibility violated § 1182(a)). In one example in the regulations, an employer sponsors a group health plan available to all employees who enroll within the first 30 days of employment, but those who enroll later are required to pass a physical examination. The HIPAA regulations instruct that "the requirement to pass a physical examination in order to enroll in the plan is a rule for eligibility that discriminates based on one or more health factors...." 29 C.F.R. § 2590.702(b)(1)(iii). In another example, an employer's group health plan permits employees who enroll during the first 30 days of employment to choose between two benefit packages, while those who enroll later are offered only one option conditioned on their good health. Again, the regulations instruct that "the requirement to provide evidence of good health in order to be eligible for late enrollment ... is a rule for eligibility that discriminates based on one or more health factors...." 29 C.F.R. § 2590.702(b)(1)(iii). Two other examples in the HIPAA regulations describe similar scenarios.

The examples in the HIPAA regulations suggest that a "rule for eligibility" presupposes the existence of a policy and attendant coverage. In such circumstances, the statute prohibits insurers from establishing eligibility criteria based on health status or claims experience. However, rules for eligibility lose their raison d'être when an insurer withdraws its policy from the market because eligibility determinations no longer need to be made. It would be counterintuitive to establish eligibility rules for a policy that no longer exists.

Case 1:14-cv-05910-AJN-HBP   Document 61   Filed 11/18/15   Page 23 of 26

**Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of America, 639 F.Supp.2d 371 (2009)**

47 Employee Benefits Cas. 1619

Second, interpreting "establish rules for eligibility" to apply to Guardian's decision to withdraw the "R0" policy from the market is at odds with the statute as a whole. Subsection (a)(2) provides that (a)(1) shall not be construed "to require a group health plan, or group health insurance coverage, to provide particular benefits other than those provided under the terms of such plan or coverage." 29 U.S.C. § 1182(a)(2)(A). Guardian is no longer providing any benefits under the "R0" policy, other than the one-year extension for disabled dependents. Thus, construing the phrase "establish rules for eligibility" as operating to prohibit withdrawal of the "R0" policy from the market would require Guardian to provide benefits it no longer offers.

**\*379** Finally, the statute's legislative history buttresses the conclusion that Guardian's decision to withdraw the "R0" policy from the New York small group market did not "establish rules for eligibility." In enacting § 1182, Congress noted:

> It is the intent of the conferees that a plan or coverage cannot single out an individual based on the health status or health status related factors of that individual for denial of a benefit otherwise provided other individuals covered under the plan or coverage. For example, the plan or coverage may not deny coverage for prescription drugs to a particular beneficiary or dependent if such coverage is available to other similarly situated individual [*sic* ] covered under the plan or coverage. However, the plan or coverage could deny coverage for prescription drugs to all beneficiaries and dependents. The term "similarly situated" means that a plan or coverage would be permitted to vary benefits available to different groups of employees, such as ... employees in different geographic locations.

H.R. Conf. Rep. No. 104–736, at 187 (1996), U.S.Code Cong. & Admin.News 1996, at 1865, 2000. This legislative history suggests that Congress was concerned with the disparate treatment of individuals

Plaintiffs point to C.F.R. § 2590.702(b)(1)(ii)(H) which provides that, "rules for eligibility include ... rules relating

to ... [t]erminating coverage (including disenrollment) of any individual under the plan." However, consistent with 29 U.S.C. § 1182(a)(1), and its legislative history, the regulation specifically refers to terminating an *individual's* coverage, not an entire policy. Here, Guardian terminated all 54 employer groups in New York with plans covered by the "R0" policy.

Accordingly, Guardian's decision to withdraw the "R0" policy from the New York small group market did not "establish rules for eligibility" within the meaning of 29 U.S.C. § 1182(a)(1). Defendant's motion for summary judgment dismissing Plaintiffs' ERISA discrimination claim is granted.

**B. *Disclosure Obligations***

**[8]** ERISA provides that "[t]he administrator [of any employee benefit plan] shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description [ ("SPD") ]...." 29 U.S.C. § 1024(b). The SPD "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). It shall set forth, *inter alia,* "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). "ERISA contemplates that the [SPD] will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Layaou v. Xerox Corp.,* 238 F.3d 205, 209 (2d Cir.2001) (internal quotation marks and citation omitted).

The administrator is defined as "the person specifically so designated by the terms of the instrument under which the plan is operated" or, "if an administrator is not so designated, the plan sponsor." 29 U.S.C. §§ 1002(16)(A), (B). "Plan sponsor" is defined as "the employer in the case of an employee benefit plan established or maintained by a single employer." 29 U.S.C. § 1002(16)(B). To establish liability under 29 U.S.C. § 1132(a)(1)(B) for failure to provide an adequate SPD, Plaintiffs must demonstrate that Guardian was designated the plan administrator. *See Lee v. Burkhart,* **\*380** 991 F.2d 1004, 1010 (2d Cir.1993) (obligation to furnish each participant with an SPD "is placed on the person designated under ERISA as the 'administrator' of the plan, not every fiduciary."); *Krauss v. Oxford Health Plans, Inc.,* 418 F.Supp.2d 416, 434 (S.D.N.Y.2005) ("Absent a specific declaration in Plan documents that an insurance company

Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of America, 639 F.Supp.2d 371 (2009)

47 Employee Benefits Cas. 1619

is the administrator, this Court cannot infer [administrator] status."), *aff'd*, 517 F.3d 614 (2d Cir.2008); *see also Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 62 (4th Cir.1992) ("While it is true that an insurer will usually have administrative responsibilities with respect to the review of claims under the policy, that does not give this court license to ignore the statute's definition of plan administrator and to impose on [the insurer] the plan administrator's notification duties.").

Plaintiffs cannot point to any document designating Guardian as the plan administrator. Rather, relying on cases outside this circuit, Plaintiffs argue that Guardian may be treated as the *de facto* administrator because it controls all aspects of plan administration. However, the Second Circuit has rejected the holding by sister circuits "that under certain circumstances a party not designated as an administrator may be liable for failing to furnish a plan description." *See Lee*, 991 F.2d at 1010 n. 5; *Law v. Ernst & Young*, 956 F.2d 364, 372 (1st Cir.1992).

Plaintiffs' attempt to distinguish *Lee* is unavailing. While *Lee* involved a self-funded plan and an insurer's narrow responsibilities regarding claims administration, the Second Circuit's reasoning did not turn on those characteristics. *See also Schnur v. CTC Comm'cns Group Disability Plan*, 621 F.Supp.2d 96, 110–11 (S.D.N.Y.2008) (internal citations omitted). Rather, the Court of Appeals focused on the language of the statute, which defines an administrator as "the person *specifically so designated* by the terms of the instrument under which the plan is operated." 29 U.S.C. §§ 1002(16)(A) (emphasis added); *Lee*, 991 F.2d at 1010 n. 5; *see also Schnur*, 621 F.Supp.2d at 110–11. Accordingly, because Guardian was not specifically designated as the administrator, it may not be held liable for inadequate disclosures under 29 U.S.C. § 1132(a)(1)(B).

**[9]** Nevertheless, to the extent Plaintiffs seek equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), their claims remain viable. *See Crocco v. Xerox Corp.*, 137 F.3d 105, 107 n. 2 (2d Cir.1998) (distinguishing between actions to recover benefits under § 502(a)(1)(B), which can be brought only against a plan or plan administrator, and claims for injunctive or other equitable relief under § 502(a)(3)). A plaintiff may pursue an equitable claim against a *de facto* administrator that failed to provide adequate disclosures. [3] *See Amara v. Cigna Corp.*, 534 F.Supp.2d 288, 333–34 (D.Conn.2008); *see also Richards v. FleetBoston Fin. Corp.*, 427 F.Supp.2d 150, 181 (D.Conn.2006), overruled on other grounds by *Hirt v. Equitable Ret. Plan for Employees, Managers, & Agents*, 533 F.3d 102, 104 (2d Cir.2008).

3   Because this Court finds the purported SPD sufficient, it does not address whether Guardian should be treated as the *de facto* plan administrator.

**[10]** The parties disagree over whether the Certificate of Coverage constituted an SPD. Assuming the Certificate of Coverage is an SPD, it adequately sets forth "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). "Section 1022(b) relates to an individual employee's eligibility under then existing, current terms of the Plan and not to the **\*381** possibility that those terms might later be changed, as ERISA undeniably permits." *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 935 (5th Cir.1993); *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 858 (4th Cir.1994). Under the section titled "When Your Coverage Ends," the Certificate of Coverage clearly states, "Your coverage ends ... when this plan ends for all *employees*. And it ends when this *plan* is changed so that benefits for the class of *employees* to which you belong ends." That provision is repeated several times throughout the Certificate of Coverage. "Plan" is defined on the first page of the Certificate to mean "the Guardian *plan* of group insurance purchased by your *employer*." Thus, the Certificate of Coverage sufficiently informed Plaintiffs that coverage would end when Guardian's WPC Policy no longer funded the Plan.

**[11]** Plaintiffs argue that Guardian did not provide Plaintiffs with any document disclosing Guardian's ability to terminate the WPC *Policy* as opposed to the *Plan*. "A company may establish an employee welfare benefit plan merely by purchasing a group policy for its employees, and the plan may consist of nothing but the purchased policy document." *Gable*, 35 F.3d at 856. As a result, the reservation of the right to modify the Plan is equivalent to a reservation of the right to modify the WPC Policy. *Cf. Gable*, 35 F.3d at 856 (reservation of right to modify the policy was tantamount to a reservation of rights to modify plan benefits generally, where the "master policy constituted the entirety of the company's welfare benefit plan"). That is exactly the situation here—the Plan operates entirely through the WPC Policy.

Accordingly, Defendant's motion for summary judgment dismissing Plaintiffs' SPD claim is granted.

### C. Breach of Fiduciary Duty

An ERISA fiduciary must discharge its duties with "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a) (1)(B); *Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 87 (2d Cir.2001). The fiduciary should act "solely in the interest of the participants and beneficiaries," and its overarching purpose should be to "provid[e] benefits to the participants and their beneficiaries" and to "defray [ ] reasonable expenses of administering the plan." *Beddall v. State Street Bank & Trust Co.,* 137 F.3d 12, 18 (1st Cir.1998) (alterations in original); *see also* 29 U.S.C. § 1104(a)(1).

**[12]**  N.Y. Ins. Law § 3221(p)(3)(A)(ii) provides that where an issuer decides to discontinue a particular type of group health insurance coverage, the issuer must offer to each policyholder "the option to purchase all ... other hospital, surgical and medical expense coverage *currently being offered* by the insurer." (emphasis added). Plaintiffs argue that Guardian breached its fiduciary duty by failing to disclose the availability of, and to offer, its "R1" and "R2" form policies as options for replacement of the discontinued "R0" form coverage. Guardian argues that policies "currently being offered" do not include the "R1" and "R2" form policies because they were only available on a renewal basis to existing "R1" and "R2" policyholder groups.

Construction of the phrase "currently being offered" is an issue of first impression under New York law that affects the outcome of this case.[4] **\*382** N.Y. Ins. Law § 3231(a) governs the manner in which insurers conduct business in New York and provides that "any small group ... applying for individual health insurance coverage ... must be accepted at all times throughout the year for any hospital and/or medical coverage offered by the insurer to individuals or small groups in this state." (emphasis added). The implementing regulations allow insurers to continue a policy form in accordance with the statute's community rating requirements, or to withdraw it from the New York market. *First United Am. Life Ins. Co. v. Curiale,* 200 A.D.2d 243, 613 N.Y.S.2d 494, 495 (3d Dep't 1994) ("[I]f [an insurer] feels that it cannot generate acceptable revenue under the new rate mechanism or for any reason is unwilling to accept community rating, it is entitled to withdraw from the New York market by ceasing to issue new policies."); *see also Coan v. State Farm Mut. Auto. Ins. Co.,* 911 F.Supp. 81, 85 (E.D.N.Y.1996). Section 3231(a) provides that "once accepted for coverage ... [t]ermination of an individual or small group shall be based only on one or

more of the reasons set forth in [§ 3221(p) ]." N.Y. Ins. Law § 3231(a).

4      This may present an appropriate opportunity for certification to the New York Court of Appeals. *See Runner v. N.Y. Stock Exch., Inc.,* 568 F.3d 383, 388–89 (2d Cir.2009) ("Where authorized by state law, this Court may certify to the highest court of a state an unsettled and significant question of state law that will control the outcome of a case pending before this Court.") (citation omitted); *Regatos v. North Fork Bank,* 396 F.3d 493, 498 (2d Cir.2005) (certifying an unsettled and significant issue of state law that will control the outcome of the case).

Section 3221(p)(3)(A)(ii), the statute at issue in this case, provides that where an issuer decides to discontinue a particular type of group health insurance coverage, the issuer must offer to each policyholder "the option to purchase all ... other hospital, surgical and medical expense coverage *currently being offered by the insurer.*" (emphasis added). Thus, section 3221(p)(3)(A)(ii) governs withdrawal from the New York market. Accordingly, the term "offered by the insurer" should be interpreted consistently. *See Puello v. Bureau of Citizenship and Immigration Servs.,* 511 F.3d 324, 329 (2d Cir.2007) ("[T]he preferred meaning of a statutory provision is one that is consonant with the rest of the statute.") (quoting *Auburn Hous. Auth. v. Martinez,* 277 F.3d 138, 144 (2d Cir.2002)); *Schneider v. Feinberg,* 345 F.3d 135, 146 (2d Cir.2003) ("The canons of statutory construction favor the consistent use of terms throughout a statute.").

DOI regulations under § 3231(a) were "designed to protect insurers writing policies from claim fluctuations and unexpected significant shifts in the number of persons insured." *Colonial Life Ins. Co. of Am. v. Curiale,* 205 A.D.2d 58, 617 N.Y.S.2d 377, 379 (3d Dep't 1994). Those regulations provide that "the department believes that insurers should be permitted to continue to serve certain previously issued policies without having to accept new applicants for older policies on an open enrollment basis," and "an insurer may continue to renew the policies without accepting any new applicants for such policies." 11 N.Y. Comp.Codes R. & Regs. tit. 11, § 360.4(a)(f)(1)-(2); *see also Council of the City of N.Y. v. Pub. Serv. Comm'n of State of N.Y.,* 99 N.Y.2d 64, 74, 751 N.Y.S.2d 822, 781 N.E.2d 886 (2002) ("[T]he interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational

Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of America, 639 F.Supp.2d 371 (2009)

47 Employee Benefits Cas. 1619

or unreasonable.") (citation and internal quotation marks omitted).

DOI's interpretation of the term "offered by the insurer" is reasonable. It permits an insurer to "continue to renew **\*383** [its] policies without accepting any new applicants for such policies." DOI's regulation harmonizes with § 3221(p) (3)(A)(ii), which requires insurers to present the option to purchase coverage *currently* being offered—recognizing that some coverage options may no longer be offered to new applicants. This reading is supported by DOI's acceptance of Guardian's proposal to discontinue plans under the "R0" contract and offer small groups the option to purchase plans under the "R3" form, the only contract Guardian actively marketed in New York. It also recognizes that sponsors of welfare benefit plans are accorded "flexibility to make future modifications of such plans as inflation, changes in medical practice and technology, and the costs of treatment dictate." *Gable,* 35 F.3d at 859 (citation and internal quotation marks omitted).

Because this Court concludes that the "R1" and "R2" policies were not "currently being offered" within the meaning of N.Y. Ins. Law § 3221(p)(3)(A)(ii), Guardian was not obliged to offer WPC its "R1" and "R2" form policies as replacement options. Accordingly, Guardian's motion for summary judgment dismissing Plaintiff's ERISA breach of fiduciary duty claim is granted.

### D. *Attorney's Fees*

[13]   "In any action under [ERISA], ... the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g). "Although success on the merits is not, in theory, indispensable to an award of attorneys' fees under 29 U.S.C. § 1132(g)(1), rarely will a losing party ... be entitled to fees." *Krauss,* 418 F.Supp.2d at 435 (quoting *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Employee Pension Ben.*

*Plan,* 698 F.2d 593, 602 (2d Cir.1983)) (alterations in original).

Since Plaintiffs have not prevailed on their claims and neither side has exhibited bad faith or culpability, this Court declines to award fees. [5]

[5]     Some courts have held that a request for fees under ERISA is not a separate cause of action. *See Cerasoli v. Xomed, Inc.,* 972 F.Supp. 175, 183 (W.D.N.Y.1997). In any event, since Defendants move for summary judgment dismissing Plaintiffs' complaint in its entirety, Plaintiffs' separate cause of action seeking attorneys' fees and costs is also dismissed.

### IV. *Remaining Claims*

Plaintiffs also assert claims for promissory and equitable estoppel, breach of contract, and unconstitutional impairment of contract rights. Plaintiffs did not respond to Defendant's summary judgment motion seeking dismissal of these claims. Accordingly, they are deemed abandoned and Plaintiff's estoppel and contract claims are dismissed. *See Babcock v. N.Y. State Office of Mental Health,* No. 04 Civ. 2261(PGG), 2009 WL 1598796, at \*1 n. 3 (S.D.N.Y. June 8, 2009) (citations omitted).

### *CONCLUSION*

For the foregoing reasons, Defendant's motion for summary judgment dismissing Plaintiffs' claims in their entirety is granted. The Clerk of the Court is directed to terminate all motions pending and mark this case closed.

SO ORDERED:

### All Citations

639 F.Supp.2d 371, 47 Employee Benefits Cas. 1619

---

**End of Document**                      © 2015 Thomson Reuters. No claim to original U.S. Government Works.