UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Victor Hernandez,

    Plaintiff,

—v—

Kirby Forensic Psychiatric Hospital, *et al.*,

    Defendants.

14-cv-5910 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

In this action under 42 U.S.C. § 1983, Plaintiff alleges that Defendant violated Plaintiff's constitutional right to privacy by disclosing his HIV status to other patients and staff at a psychiatric hospital. Defendant now moves for summary judgment, which Plaintiff opposes. For the reasons given below, Defendant's motion is GRANTED.

I. BACKGROUND

Except where otherwise noted, the following facts are not in dispute. Plaintiff was hospitalized at Kirby Forensic Psychiatric Hospital ("Kirby") from December 5, 2013, to January 3, 2014. Dkt. No. 165 ¶ 11. On January 2, 2014 Plaintiff was arrested and taken to central booking for processing on charges that he had attacked Kirby staff. *Id.* ¶ 52. As further discussed below, the details of this incident are in dispute. Plaintiff was soon transferred to the New York City Department of Corrections. *Id.* ¶ 12. Plaintiff did not return to Kirby after this transfer. *Id.* ¶ 13.

Plaintiff alleges that during the brief period after he had returned to Kirby, he was approached by three other patients who informed him that Jonathan Daniels, a Kirby staff

1

member and the remaining Defendant in this case, had told them that Plaintiff was HIV positive. Sec. Am. Compl. ¶¶ 8-17. Plaintiff further alleges that Daniels had not been authorized by Plaintiff to make this disclosure. *Id.* Plaintiff later claimed in his deposition that Daniels also told other Kirby staff about Plaintiff's HIV status. Hernandez Tr., Dkt. No. 166-1, at 57:3-58:12. Daniels denies that he made any such disclosure and counters that Plaintiff himself disclosed his HIV status publicly during an attack on Kirby staff. Daniels Decl., Dkt. No. 171 ¶¶ 5-6, 10.

On May 8, 2015, relating to the December 31 incident, Plaintiff pleaded guilty before Justice Wittner of the New York State Supreme Court to one charge of Aggravated Harassment of an Employee by an Inmate. Dkt. No. 165 ¶¶ 56-57. Under oath, Plaintiff responded "[y]es" to the question of whether he "threw a tissue which has blood on it at a Corrections employee or mental health employee." *Id.* ¶ 58. In response to the question of whether he had done so "[w]ith intent to harass, annoy or alarm," Plaintiff again responded in the affirmative. *Id.*

Plaintiff filed his initial complaint in this action on July 28, 2014. Dkt. No. 1. On December 14, 2015, Plaintiff filed his Second Amended Complaint, ("Sec. Am. Compl."), Dkt. No. 65, which is the operative pleading in this action. In addition to the claims against Daniels, Plaintiff also brought suit against two of Daniels' supervisors under a theory of supervisory liability. *Id.* ¶¶ 27, 33. On January 13, 2016, Defendants moved to dismiss Plaintiff's claims against Daniels' supervisors, Dkt. No. 67, which this Court granted on September 14, 2016, Dkt. No. 90. Daniels filed for summary judgment on December 7, 2018, Dkt. No. 163. Plaintiff's opposition was filed on May 15, 2019. Dkt. No. 189. Defendant then filed a reply on May 28, 2019. Dkt. No. 191.

## II. LEGAL STANDARD

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). In conducting this analysis, a court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and alterations omitted). If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and accordingly the court will grant summary judgment to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Additionally, the Court construes all of Plaintiff's arguments liberally as "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

### III. DISCUSSION

Plaintiff asserts that by disclosing Plaintiff's HIV status to others on the hospital ward without authorization, Defendant violated Plaintiff's constitutional right to privacy. Defendant moves for summary judgment on the grounds that the only evidence in the record that Defendant made such a disclosure is Plaintiff's inconsistent testimony; that Plaintiff forfeited his right to privacy by publicly disclosing his own HIV status; that any disclosure would have served a legitimate penological interest; and finally that Defendant is protected by qualified immunity. For the reasons below, the Court concludes that Defendant is entitled to summary judgment because Plaintiff's public disclosure of his HIV status eliminated any reasonable expectation that

3

this information would remain confidential. Since the Court finds that this is sufficient to resolve this motion, it is not necessary to reach any of Defendant's other arguments.

Before turning to the merits, the Court initially notes that Plaintiff failed to respond to Defendant's Statement of Undisputed Facts, filed pursuant to Local Rule 56.1. Dkt. No. 165. Generally, any fact asserted in a moving party's Rule 56.1 Statement "will be deemed to be admitted for purposes of the motion unless specifically controverted by a corresponding numbered paragraph in the statement required to be served by the opposing party." Local Rule 56.1(c). "*Pro se* litigants are 'not excused from meeting the requirements of Local Rule 56.1.'" *Lee v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 14-cv-5278 (KPF), 2016 WL 3542454, at *7 (S.D.N.Y. June 22, 2016) (quoting *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009)). Nonetheless, "the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali*, 678 F. Supp. 2d at 178 (citing *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)). Particularly in light of Plaintiff's *pro se* status, the Court therefore conducts an independent review of the evidentiary record to ensure that Defendant has met its burden of production, that no genuine disputes of material fact remain, and that Defendant is entitled to judgment as a matter of law. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

### A. Plaintiff's Highly Inconsistent Testimony, Standing Alone, Cannot Create a Genuine Dispute of Material Fact

Plaintiff disputes that he attacked Kirby staff on December 31, 2013 and that during that attack he publicly disclosed his HIV status. However, the only evidence in support of Plaintiff's argument is his own testimony, which is so inconsistent that it on its own cannot create a genuine dispute of material fact.

As a general matter, a court will not make credibility determinations on a motion for summary judgment. However, summary judgment is appropriate if (1) there is "nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony" and (2) "even after drawing all inferences in the light most favorable to the plaintiff . . . no reasonable person could believe [their] testimony." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 555 (2d Cir. 2005) (internal quotation marks and brackets omitted); *see also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (same). Thus, if a plaintiff's testimony is riven with contradictions and no "hard evidence" exists that could "show[] that [his] version of the events is not wholly fanciful," then this testimony will be insufficient on its own to create a genuine dispute of material fact. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). That is the case here.

Plaintiff's testimony as to a December 31, 2013 altercation contradicts his previous testimony under oath and his own testimony here. In his interrogatory response, Plaintiff stated that he had been arrested "for no reason." Liebowitz Decl. Ex. H at 4. At his deposition, Plaintiff testified that there was no altercation, but rather that it was a conspiracy against him by Kirby staff. Hernandez Tr. at 84:3-87:14, 90:15-20; 128:21-129:6. This is in direct contradiction with Plaintiff's own testimony under oath in New York Supreme Court in which he admitted to intentionally throwing a blood-covered tissue at staff. See Liebowitz Decl. Ex. C at 3:17-4:14.

This is not the only inconsistency. In his Second Amended Complaint, Plaintiff alleges that he returned to Kirby after "an unrelated outside medical procedure." Sec. Am. Compl. ¶ 8. Yet at his deposition, he acknowledged that he had been taken off the ward to process his arrest. Hernandez Tr. at 128:11-130:22. Finally, Plaintiff does not offer any hard evidence to support

5

his version of these events.

Plaintiff's testimony as to the alleged disclosure of his HIV status is also replete with inconsistencies. At his deposition, Plaintiff initially testified that he had not personally witnessed Daniels telling others about Plaintiff's HIV status, Hernandez Tr. at 56:25-57:3, before moments later reversing course and testifying that he had witnessed Daniels telling other Kirby staff, *id.* at 57:3-58:12. Moreover, in an interrogatory response, Plaintiff initially stated that an "affirmation of oath" containing the testimony of three other patients was destroyed by Daniels and that he had confronted Daniels about the document's destruction while still at Kirby. Liebowitz Decl. Ex. H at 3. Plaintiff then testified at his deposition that he had only told Kirby's Executive Director Vincent Miccoli about the document by letter and that he did not know what had happened to it subsequently. Hernandez Tr. at 59:15-62:18. As to the above, Plaintiff does not point to other evidence besides his own inconsistent testimony.

It is true that as to whether Daniels told other patients that Plaintiff had HIV, one other patient recalled Daniels saying that Plaintiff had "HIV or hepatitis C" or "bipolar disorder." Liebowitz Decl. Ex. B at 9:2-16, 11:18–12:14. However, this patient also testified that he never signed any documents for Plaintiff, contrary to Plaintiff's account. *Id.* at 13:22–14:3. Furthermore, because the Court holds for the reasons given below that Plaintiff voluntarily disclosed his HIV status, the question of whether or not Daniels actually told other patients is not relevant to the disposition of this motion. *See* Section II(C) *infra*. Finally, the fact that Plaintiff's otherwise inconsistent and shifting account has external corroboration in one respect does not preclude this Court from concluding that his testimony is otherwise "largely unsubstantiated by any other direct evidence." *Jeffreys*, 426 F.3d at 551.

Indeed, the inconsistencies described above are not minor. Plaintiff's account of central

6

events in this case shifts dramatically under questioning and is contradicted not only by evidence in the record but often by Plaintiff's own sworn testimony. Given this, even viewing the evidence in the light most favorable to Plaintiff, his account of the facts is "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint." *Jeffreys*, 426 F.3d at 554-55 (internal quotation marks omitted). Accordingly, Plaintiff's testimony on its own is insufficient to create a genuine dispute of material fact.

### B. There Is No Genuine Dispute of Fact that Plaintiff Knowingly and Voluntarily Publicly Disclosed his HIV Status

As to whether Defendant actually disclosed Plaintiff's HIV status to other patients, Plaintiff does point to other evidence besides his own testimony, namely the testimony of another Kirby patient. Dkt. No. 189. However, the Court need not decide whether this is sufficient to create a genuine dispute of material fact as to whether Defendant disclosed Plaintiff's HIV status, since the Court concludes that there is no genuine factual dispute that Plaintiff knowingly and voluntarily publicly disclosed his HIV status during the December 31, 2013 altercation with Kirby staff members.

Defendant presents declarations from several staff members and contemporaneous records describing this altercation. This evidence indicates that on December 31, 2013, after being denied donuts and candy, Plaintiff became confrontational with Kirby staff. Dkt. No. 165 ¶¶ 35-49. After Plaintiff "began cursing at staff" and "threw a telephone on the floor," he was placed in a side room called the "time out room." *Id.* ¶¶ 35-39. Once in the time out room, Plaintiff "repeatedly punched a metal grate, causing his hands to bleed, and attempted to scratch, bite, and kick" two Kirby staff members. *Id.* ¶ 41. During this time, Plaintiff was "yelling loudly that he had HIV and threatening to infect Kirby staff members with HIV." *Id.* ¶ 42.

7

Plaintiff also took a tissue covered in blood and threw it in the face of one of the staff members. *Id.* ¶ 45. No evidence in the record, apart from Plaintiff's inconsistent testimony, rebuts the evidence above. Indeed, Defendant's account of the altercation is independently supported by Plaintiff's own sworn testimony in New York Supreme Court. *See* Liebowitz Decl. Ex. C at 3:17-4:14. Even viewing this evidence in the light most favorable to Plaintiff, there is no genuine dispute that this altercation took place in the manner Defendant describes.

Defendant also offers staff testimony in support of the contention that Plaintiff publicly disclosed his HIV status to the rest of the ward. During the altercation, the door to the time out room had been left open, per Kirby's policy. Dkt. No. 65 ¶ 40. As a result, "Plaintiff's threats that he had HIV and would infect Kirby staff could be heard throughout the ward by both staff and patients." *Id.* ¶ 43. At the time, Daniels was in the "day room" with "most of the patients on the ward." Dkt. No. 171 ¶ 4. From this location, Daniels could hear Plaintiff's threats to the staff and his claim that he had HIV. *Id.* ¶ 5. A second staff member also reports that he could hear Plaintiff's threats to infect the staff with HIV from elsewhere on the ward, and that these threats could be heard "throughout the ward." Dkt. No. 169 ¶¶ 5-6. Once again, there is no evidence to rebut this besides Plaintiff's own inconsistent testimony.

Finally, Defendant presents evidence that Plaintiff was acting knowingly and intentionally during the altercation and disclosure. Testimony of staff and a contemporaneous report from a clinician describe Plaintiff as coherent at the time of the altercation and describe his actions as intentional. Dkt. No. 165 ¶ 48. Plaintiff also admitted as part of his criminal plea that he had acted intentionally. *See* Liebowitz Decl. Ex. C at 3:17-4:14. Additionally, Plaintiff was shouting loudly in a side room with a door open to the rest of the ward, with the natural consequence that the rest of the ward could hear him, as they did. Once again, there is no

8

evidence in the record that rebuts Defendant's evidence that Plaintiff acted knowingly and intentionally.

Plaintiff argues that the above evidence is unreliable because several Kirby employees did not, at the time of the incident, report that Plaintiff threatened to infect them with HIV. Dkt. No. 189 at 3-8. Instead, they mentioned his threat only in their sworn declarations, submitted years after the incident. Plaintiff is correct that these three employees did not mention the threat in their contemporaneous reports. But this alone is insufficient to render their later declarations unreliable or to create a genuine dispute of material fact.

To start, the original reports are consistent with the later declarations. Every document makes clear that Plaintiff threatened and attacked staff members. Dkt. No. 189 10-21. Moreover, several reports filed on the day of the incident state that Plaintiff threatened to infect staff members with HIV. A Kirby nurse noted that Plaintiff "threaten[ed] to infect staff with HIV by bleeding on them." Weisner Decl. Ex. J. Another staff member reported that Plaintiff "screamed . . . 'I'm going to bleed on one you, I'm gonna bite one of you, I have HIV.'" Jimenez Decl. Ex. B. The fact that some contemporaneous accounts mention this statement and others do not does not, by itself, render the latter unreliable. To create a genuine issue of fact on this issue, Plaintiff had to provide evidence other than his own inconsistent testimony. *See Jeffreys v. City of New York*, 426 F.3d at 555. Plaintiff failed to do so, and his "reliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion." *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).[1]

---

[1] As noted above, Plaintiff failed to reply to Defendant's Statement of Undisputed Facts. Those facts are therefore admitted for purposes of this motion. They include Plaintiff voluntarily and knowingly disclosing his HIV status to the hospital ward. Dkt. No. 165 ¶¶ 35-49.

9

### C. Plaintiff's Knowing and Voluntary Public Disclosure Forecloses his Claim

Because of Plaintiff's own knowing and voluntary public disclosure of his HIV status to the rest of the ward, Plaintiff's claim fails as a matter of law.

The Due Process Clause of the Fourteenth Amendment protects the right to privacy in two ways. First, it protects the "right to autonomy and independence in decision-making for personal matters." *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994). Second, it provides "a right to confidentiality" that "protect[s] the individual interest in avoiding disclosure of personal matters." *Id.* (internal quotation marks omitted). When, as with HIV status, disclosure risks exposing an individual to the stigma of others, this confidentiality protection is "at its zenith." *See Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999). Accordingly, Plaintiff's HIV status is information that would ordinarily receive strong constitutional protection.

However, "there is no question that an individual cannot expect to have a constitutionally protected privacy interest in matters of public record." *City of New York*, 15 F.3d at 268. Accordingly, an individual cannot "expect their constitutional right to privacy to protect them against the disclosure of medical information that had already previously been disclosed to the public." *Rush v. Artuz*, No. 00-cv-3436, 2004 WL 1770064, at *11, 12 (S.D.N.Y. Aug. 6, 2004). So, for example, an incarcerated individual does not have a right to confidentiality in his wrist injury if he wears a splint that makes this injury visible to those incarcerated alongside him. *Id.* Similarly, someone may "waive[] the right to privacy in the status of his knee condition" by publicly wearing a "brace and sleeve." *Taylor v. Macomber*, No. 97-cv-4127 (DAB), 1999 WL 349696, at *3 (S.D.N.Y. May 27, 1999).

In this case, Plaintiff's public disclosure of his HIV status is fatal to his claim. At the time Plaintiff alleges that Daniels told others on the ward about Plaintiff's HIV status, Plaintiff

10

had already loudly broadcast this information to the rest of the ward. Plaintiff's threats that he would infect Kirby staff with HIV could be heard "throughout the ward," Dkt. No. 169 ¶¶ 5-6, including in the day room where "most of the patients" were located, Dkt. No. 171 ¶ 4. Given this public disclosure, Plaintiff had no reasonable expectation that his HIV status would be kept private from his fellow patients and Kirby staff. *See, e.g., Rush*, 2004 WL 1770064, at *11.

The Court is careful to note, however, that it is the public nature of the disclosure in this case that it dispositive, not simply the existence of *a* disclosure. An individual's disclosure to some does not necessarily eliminate the right to confidentiality in that information as to others. *See Doe v. Se. Pennsylvania Transp. Auth. (SEPTA)*, 72 F.3d 1133, 1139 (3d Cir. 1995) (an individual's "decision to give private information to some co-workers does not give carte blanche to other co-workers to invade his privacy"). Indeed, the constitutional right to confidentiality is grounded in the recognition that it is the individual herself who should typically be the one who decides to whom personal information is disclosed. *See City of New York*, 15 F.3d at 267 ("Clearly, an individual's choice to inform others that she has contracted [HIV] is one that she should normally be allowed to make for herself."); *SEPTA*, 72 F.3d at 1139 (an individual should be allowed "to measure out information about herself selectively," as a "secret remains a secret even when shared with those whom one selects for one's confidences" (internal quotation marks omitted)). Had Plaintiff disclosed his HIV status to only Kirby staff, this in itself would not necessarily mean that he had lost any reasonable expectation in the privacy of this information. However, by broadcasting his HIV status to the ward, Plaintiff forfeited any reasonable expectation that this information would remain confidential from, at the very least, Kirby staff and other patients.

Finally, Plaintiff's disclosure was knowing and intentional. A public disclosure must

have been made voluntarily to defeat a constitutional confidentiality claim. *See Hirschfeld v. Stone*, 193 F.R.D. 175, 185 (S.D.N.Y. 2000) (citing *City of New York*, 15 F.3d at 268-70) ("a plaintiff does not lose his privacy right when defendants choose to place his personal information in a public record"); *see also Jones v. Lacey*, 108 F. Supp. 3d 573, 583–85 (public disclosure foreclosed constitutional privacy claim when information was "intentionally revealed, without coercion by the state, to the public") (quoting *Lockwood*, 89 F.3d 833). The Second Circuit has also suggested that waiver of this right through disclosure must be knowing, intelligent, and voluntary. *Doe v. Marsh*, 105 F.3d 106, 111 (2d Cir. 1997). This waiver analysis may be appropriate for determining, for example, whether an individual consented to public disclosure by another party by entering into a settlement agreement, as in *City of New York*, 15 F.3d at 268-70. However, for the reasons given above, this framework is less well-suited to the context of a direct public disclosure of information by an individual herself. Consistently with this, courts in this circuit have not applied the knowing, intelligent, and voluntary standard in cases involving such direct public disclosures. *See Pelosi v. Spota*, 607 F. Supp. 2d 366, 373 (E.D.N.Y. 2009); *Giaccio v. City of New York*, 502 F. Supp. 2d 380, 384 (S.D.N.Y. 2007), *aff'd*, 308 F. App'x 470 (2d Cir. 2009); *Rush*, 2004 WL 1770064, at *11; *Hirschfeld v. Stone*, 193 F.R.D. at 185-90; *Taylor*, 1999 WL 349696, at *3. The same is true for the cases outside of this circuit of which this Court is aware. *See Jones*, 108 F. Supp. 3d at 583–85; *Gooden v. Carson*, No. 05-cv-46 (WCO), 2006 WL 1209923, at *6 (N.D. Ga. Apr. 26, 2006); *Cummings v. Walsh Const. Co.*, 561 F.Supp. 872, 885 (S.D. Ga. 1983).

This is not to minimize the extent to which such disclosures must be knowing and voluntary. Indeed, the right to confidentiality protects against "forcible disclosures." *Hirschfeld*, 193 F.R.D. at 186 (quoting *Eastwood v. Department of Corrections*, 846 F.2d 627, 631 (10th

Cir.1988)). Rather, it is simply to say that the analysis is different in the case of a direct public disclosure than it would be when determining whether an individual had formally waived a constitutional right through a contract or agreement. *Cf. Morris v. New York City Employees' Ret. Sys.*, 129 F. Supp. 2d 599, 608-11 (S.D.N.Y. 2001) (describing the standard for waiver of constitutional rights in the contractual context). In this case, as explained above, there is no genuine dispute of fact as to whether Plaintiff's disclosure was knowing and voluntary. This knowing and voluntary public disclosure therefore eliminated any reasonable expectation of privacy in the confidentiality of Plaintiff's HIV status with respect to the rest of the ward.

Accordingly, Defendant's motion for summary judgment is GRANTED.

## IV. CONCLUSION

For the reasons given above, the Court hereby GRANTS Defendant's motion for summary judgment. This resolves docket item number 67. The Clerk of Court is directed to enter judgment and close the case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

A copy of this Opinion and Order will be mailed to the *pro se* Plaintiff and that mailing will be noted on the public docket.

SO ORDERED.

Dated: September 21, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge